for the appellant, Gerald Timmerwilke, for the appellee is Rasha Brooks. This is case number 410-0641, you may proceed. Thank you, Your Honor. Your Honor, we are asking the court to reconsider Judge Vaila's ruling in regard to this case. The situation is that he denied a petition to rescind. My client was driving a motorcycle and was involved in an accident in Adams County. He had his wife on the back of the motorcycle. The accident happened about 8.27 in the evening. And the famous line that the police hear probably thousands and thousands of times, I tried to avoid a deer is not what's relevant in this case, because in fact they hit a deer and the deer was dead at the scene. So a young deputy came, Deputy Gale, from the Adams County Sheriff's Department. He'd been on the patrol approximately three years. And when he came to the scene, Mr. Plunk and his wife were being attended to by ambulance personnel. They were off the side of the road laying down like in a ditch, and he noted the deer, he noted the motorcycle, he saw some items. And the officer went over and according to him, he hunched three to four feet over Mr. Plunk and talked to him approximately 60 seconds, obtained a little bit of information from him and asked him about his driver's license and insurance card. He then did obtain his driver's license and insurance card from where the motorcycle was. He also obtained his wallet. And at that time I asked him very specific questions from Judge Vail at the petition to rescind about what he noticed about the defendant at that time. Did he observe anything about the defendant that would indicate to him that he may be impaired? It's our position that the officer testified clearly and unconditionally. He smelled no alcohol on him. He smelled no, saw no alcohol at the scene. He saw no evidence of alcohol or illegal drug use, found no illegal drugs at the scene. So what happened then is he retained Mr. Plunk's billfold, his driver's license and his insurance card, and the accident scene was approximately 40 minutes from Blessing Hospital in Quincy. The officer closed up his scene work, drove to the hospital, and there he met Mr. Plunk at the hospital. Mr. Plunk was being treated, and that time again he talked to Mr. Plunk. This time he had more of an opportunity to talk to Mr. Plunk. He was again questioned about whether he smelled any alcohol on Mr. Plunk. He indicated none. He was questioned if he saw anything unusual about him that would lead him to believe that he was under the influence of either controlled or illegal substances. He said no, and specifically he was questioned if he observed anything about him that made him believe that he would be impaired. And the officer said he really didn't have anything there other than this. He said that he had indicated the defendant that he drank two or three beers, and his eyes were glassy and bloodshot. Please consider that this is 1225 a.m. the next morning. The accident happens at 830. It's 1225 a.m. And he admitted to the two beers, admitted to consuming two to three beers, he had bloodshot eyes, and there was an accident. I akin this case and ask you to consider the Bloomer case, or Boomer case, People v. Boomer, which is a 2nd District case, 757 NE 2nd 2nd 960. And in many respects what we have is a motorcycle accident, and in that case, which is different, the person is injured and can't speak, but the officer asked the person if they were drinking, they nodded yes, and in that case the officer testified, I smelled a strong odor of alcohol. Even in the Boomer case, the appellate court found that that was insufficient for probable cause. Probable cause is akin to reasonable cause for purposes of these petitions for statutory summary suspension. So our position is then that the officer, what happened is he looked at the hospital report, and the blood was taken around 10 o'clock, 1025 p.m. that night, for the hospital. When he saw that report, he saw that the client had a .032 alcohol reading level of blood alcohol content. In addition to that, however, and this is where the twist comes in in this case, it was positive for opiates and amphetamine. So in the transcript and in the hearing, I questioned the officer, did you see any signs of methamphetamine, any signs of cocaine? The officer unfortunately testified he'd never seen anybody on methamphetamine, never observed anybody, so he had no experience there on what someone would act like if they were impaired under that situation or high on that drug. In the opiates, I asked him if he questioned hospital personnel or questioned the defendant, if the defendant could have received the opiates, which could be a form of morphine. He said no. He didn't inquire of hospital personnel. He didn't inquire of the defendant. He didn't inquire of the defendant if he was on any prescribed medication for amphetamines, allergy medications. He just said no. So it was at that point then that the officer, after he saw that hospital test, decided he was going to issue the citation. He issues the citation. According to the officer, he places him under arrest at 1225 and he asks him to take the test, which he does, the blood test for the police request at 1240. So our position is no probable cause at the scene, no probable cause at the hospital. He didn't have a basis to place him under arrest. He didn't have a basis, therefore, to ask him to take a blood test. Now, in combination, there's another issue in this case. Judge Bailey must have misheard at the trial the evidence, but Judge Bailey made a specific finding in the hearing that the defendant was questioned by the officer and the defendant denied that he was on any prescription medication for those substances. Those substances were amphetamine and opiates from the hospital blood test that was taken. Counsel Brooks has conceded that that's against the manifest way to the evidence. Our position and what we're asking the court to do is to review this in Olin and say that if you take that error out and add it to the Boomer case, there's not reasonable probable cause that the officer had to make the arrest and certainly not cause even making an arrest. He issued no ticket because of the deer, so there's no other ticket out there that would be issued in combination with a notice because there's a personal injury accident to support what he did. He elected, the officer elected not to pursue a notice of suspension under the personal injury where there's a Class A or a Type A injury. He elected to issue the notice under the DUI statute. So we are asking you respectfully to take a look at the Bloomer case and review this situation and hopefully find that with Judge Bailey believing that he did lie to the officer. Counsel, maybe I misunderstood your argument, but I thought in your brief you were asserting the officer actually placed him under arrest prior to, until he got to the hospital and that that was improper for the officer to have done so. We are. That is part of the argument too because he took possession of his billfold and his driver's license and there are, and we did cite cases in our... Just assume argument, do I agree with that? I guess my question is, so what difference does that make? He didn't have probable cause. He didn't have reasonable suspicion. And therefore, what? Therefore, he should not have issued the citation and he should not have requested a chemical test. It almost seems like you're arguing a motion to suppress within a petition to rescind. I agree. That's what you're doing then. Right, and they are, because the probable cause issue, I think there's a decision that says it's really synonymous with in a petition to rescind, there's a decision that says that reasonable suspicion under a petition to rescind equates very much to probable cause of arrest. Okay, so walk me through this again. Officer was wrong to place him under arrest because no probable cause, therefore wrong to follow him to the hospital, and therefore wrong to look at the blood test, and so that's not admissible? If I'm misstating, correct me. No probable cause for arrest at the scene, clearly. He talks to him 60 seconds, he's hovering over him three to four feet, he smells no alcohol, he sees no alcohol at the scene, all he's got is a hearsay statement from somebody that said he'd been on a poker run and the defendant had stopped at a bar. So if the court looks at it and says he did take custody of his driver's license in Bill 4, maybe that was the point of arrest. Who took custody of him? The police officer. Where did he get it? At the scene. Where? Apparently, according to the best information that the officer said, that after the accident there was debris or things that maybe came out of the basket or the saddles, and some friends called them buddies. The officer said it had shown him and assisted in picking some of this up. And the officer said he went to the defendant and he did talk to him about a driver's license and insurance, and then he apparently went to these buddies and they showed him where the billfold was. So I'm assuming that the defendant must have had the billfold come loose from his pocket because of the accident. So it wasn't even in his possession. It was not in the possession of the defendant. Correct. So Judge Turin, in answering your question, I know that's a side issue. It is an issue that he did take possession and he did obviously intend on going to the hospital to do a follow-up. But then when he gets to the hospital, the thrust of my argument is he still has no probable cause in any way that he's impaired. He's interviewing him. He doesn't smell any alcohol on him. I asked him if his speech was slurred. I think that's in there. He said no. I asked him if there was any other signs, any hiccuping, anything unusual. No, no, no. So what happens then is that he has the benefit of he goes to the lab and they tell him, yeah, we did a lab report. He sees it's an 032. I questioned him about that. He said it clearly appeared then not to be intoxicated, but he sees opiates and he sees amphetamine. Well, let me ask you about that. Doesn't the vehicle code at 11-501.4-1A allow for the officer to review the blood test without probable cause? It does. But my argument is he still didn't have enough of that because he didn't pursue it. But once he then looks and sees that there's some alcohol, there's methamphetamine, not methamphetamine, there was amphetamine in opiates, now you've got that combination, which is also covered in the statute. Why isn't that then probable cause to go ahead and issue the citation? My argument to that would be factually specific in this case because everything else he had was that this person was not impaired. He had an opportunity at the scene to look for illegal substances, which he didn't find. He had an opportunity to look for alcohol. He smelled no alcohol. He had nothing. So I think my argument is really the officer went on a fishing expedition when he saw those two things. Okay, well, we're going to cancel, but we've got an accident We've got at least some statement that he was on a poker run, which I understand is you go from bar to bar and get a beer at each one or a drink at each one. He sees these tests. There is evidence of at least a measurable BAC, and then you've got the opiates and the amphetamine. But you're still saying even all that taken together doesn't rise to the level of probable cause to make the arrest. I am, and I'd ask you to look at Boomer. I'll take a look at Boomer. I do like this one thing that you indicated, and I guess I wrote a note here, reasonable articulate suspicion that he was impaired. And then the question is, do all participants in a poker run, direct to the point of intoxication, do all participants in a poker run become impaired because they take cocaine? Do all participants in a poker run become impaired because they use methamphetamine? And the answer is no. There's many people that drive motorcycles that don't drink and don't use drugs. So I don't think the officer had it in this case. He's a fine young officer. I'm not here to tear into the officer, but he just didn't do the... He could have, when he saw the opiates and when he saw the amphetamine, he could have taken the next step and said to the hospital personnel, would the opiates be a result of morphine? Have you given this person pain morphine? He could have taken the next step and said to Mr. Plunk, are you on any legally prescribed drugs that amphetamine would have been part of that drug, but he didn't do it. Thank you. Thank you, counsel. Ms. Brooks, please. May it please the court and counsel, My name is Anastasia Brooks and I represent the people in this case. First of all, the state is not disputing the defendant's argument about the lack of probable cause at the scene. Under the Boomer case, the evidence there just isn't showing probable cause. Even admissions of a few drinks was not going to reach the level required for arrest for driving under the influence of alcohol, which is an actual impairment offense. However, what happened is he was eventually cited and arrested for a different subsection, section 11-501A6, which is a no impairment violation, a drug DUI in which there is no proof of impairment required. Therefore, the officer doesn't have to have probable cause that the defendant was actually impaired when he was driving. So therefore, the fact that the officer had no experience with drug impaired suspects, for example, doesn't really contribute or take away anything from the probable cause finding that was made upon the positive test results obtained from the hospital. So for that reason, the traffic citation does establish the basis of the arrest as being for drug DUI, not for an actual impairment based on drinking of the alcohol. So the question then becomes whether the police needed probable cause in order to request the hospital blood test results. But because of that special statute that was cited, 11-501.4-1A allows the police to obtain that and for the hospital to disclose physician ordered tests upon request because of this was the type of accident injury that had occurred. So for that reason, there was no even reasonable suspicion that would have been required in order for the police to follow the defendant to the hospital and to investigate the circumstances of the accident. And the retention of the wallet, at least from the... Counsel, before you move on, regarding the section you cited, 501.4-1A, I notice the statute says such blood or urine tests are admissible in evidence as a business record exception to the hearsay rule only in prosecutions for any violation of 11-501 of this code or a similar provision of a local ordinance. You're using it here in a petition to rescind. How can you use that evidence based upon that statutory language? Because the officer derived probable cause to arrest their front. So it's a defendant's burden to show that there was a lack of probable cause. So essentially, the defendant is not arguing that the... I didn't see in the defendant's brief that he was arguing that although the officer had probable cause based on the hospital test, the state can't admit the hospital tests in response to show that the officer did have probable cause. I didn't see the argument in the defendant's brief to show that somehow the state was foreclosed from proving... I don't think he made it. I was just asking. Right. Right. It would seem absurd for a prosecution to be based on a hospital blood test but yet not a statutory summary suspension, which is actually a lesser burden on the defendant's rights rather than a criminal prosecution. I don't know if that was a legislative oversight. I'm not sure. I haven't really considered this point because you're raising it here on appeal. It's an oral argument, so I'm not sure if that's something that supplemental briefing might be warranted for. I would be willing to prepare that if it were requested. I'm not sure if I answered your question really adequately at this time. No, I think you've answered it as well as you can, and you're right. I did raise it basically from the bench as it wasn't, I think, mentioned in either of the briefs. We'll talk about it when we've completed your arguments. If the court wants further briefing or if the court doesn't think it's necessary, we'll let you know. Thank you, Your Honor. We'll let you know if we want further briefing. If you don't hear anything, that means you don't. I understand, Your Honor. Thank you. But the fact that the defendant has not raised it, especially in this civil law context, should be an indication that if the point is forfeited or it doesn't bind this court for considering that issue, that would be the basis for affirming the judgment. Once the implied consent law takes effect here, the officer already has the probable cause to arrest, the actual arrest for the A6 subsection, the drug DUI, no impairment violation. So therefore, the order of sequences was actually legal because there was no probable cause, but no arrest earlier on, and once the probable cause arises, there is an arrest, and then there is the request for the implied consent tests, and that is what is the basis for the statutory summary suspension. The question the defendant argued is that the police failed to take the sort of next step that was purportedly required of the police officer in order to sustain probable cause, according to the defendant's argument, by seeing if a positive test result could have been attributed to legal substance use rather than illegal substance use, because the violation requires that the substance have been used illegally. However, the case cited in the state's brief establishes that it's not required for the police to explore and eliminate every possible claim that would be consistent with the defendant's innocence, and probable cause is not negated if there in fact exists a possible innocent explanation that might be consistent with the facts. So if the defendant points out here that if he had been taking certain antihistamines, that could have caused a positive test result for amphetamine use, however, the record doesn't really establish that a false positive like that is in fact, there's no medical expert testimony that says this type of phenomenon actually happens. In any event, there's no claim by the defendant that he was in fact taking a particular antihistamine that would have this impact. So the only complaint really that the defendant can make is, well, the police didn't ask the right question and didn't investigate further, but yet for at least purposes of probable cause, which is the issue here, the failure of the police to sort of dig deeper into these possible theories of innocence is not required. So there's also no showing by the defendant that he was in fact administered morphine at a time prior to the blood draw upon which the test results that supported probable causes were made. So those facts aren't even developed in this record to show that this basis actually was meritorious, let alone that just merely the only thing that happened was the officer failed to ask the right questions before jumping to the conclusion of finding a probable cause. So for that reason, his argument is not meritorious. There is a factual finding the state did concede that was against the manifest weight of the evidence because the defendant never did deny being on these prescription drugs. However, this court can still consider the facts that are in the record as corrected by a factual finding on appeal to show that there was facts of record as part of a de novo review of whether the deputy had probable cause. So therefore, it's not a reversible error, it's just one in which this court can then consider as part of all the facts in the record that are in the record, basically disregarding the factual finding that was erroneous by the judge, and then this court can determine de novo whether there was in fact probable cause. And I did not remember seeing an actual motion to suppress evidence filed as part of the rescission hearing, but still the defendant would have to make some sort of Fourth Amendment showing of a fruit of the poison's tree in order to exclude evidence of the hospital tests. And the fact that he was taken to the hospital independently of police conduct, and the fact that the deputy could obtain those test results on an independent basis, shows there was no, the police didn't capitalize on any improper seizure, even if the defendant were correct, which the state is not conceding that he is, but even if he were somehow prematurely arrested by holding onto the driver's license. But it's not like he was... Well, doesn't the Kruger case say contrary? Right, and I believe I raised this in a HACR appeal, and I was unsuccessful. Of course, the difficulties in HACR were that sometimes if the state's appealing party, cases like that where we cannot necessarily... Those issues are forfeited if they're not raised below as an appellee here, though the state can present any argument in favor of affirmance, and if this court disagrees and orders rescission on the basis of a Fourth Amendment violation, the state would intend to take a petition for leave to appeal on the grounds of the preserved arguments that there should be no Fourth Amendment exclusionary rule in the context of a civil proceeding such as a rescission petition. So for that reason, I've mentioned that argument. However, he was not actually arrested, because unlike the case that he cites, he wasn't taken to the police station, for example. The fact that he remained confined in the hospital was incident to his injuries and medical exigencies, and it wasn't a result of any police-ordered confinement. So therefore, the state's authority in the brief shows that he wasn't actually seized as a result of anything the police did. So the last argument is whether somehow the judge's failure to make this sort of burden-shifting apparent on the record. And the state's not conceding the private station case was ever established, and if it were, it became moot, because the question becomes whether the defendant met its burden of persuasion, a burden which never shifts upon the making of the private station case, which refers to, in fact, the burden of production. So the fact that the burden of persuasion remains on the defendant as the party requesting relief means that this court can then rule on the merits of the judge's ruling based on the relief requested and the final ruling of the judge, and not whether there was somehow a failure to acknowledge a private station case. So that is not in itself a reversible error. And so for these reasons, if this court has no further questions, we request that this court approve the judgment of the circuit court.  Thank you. Rebuttal, please. Just two brief things I'd like to state in rebuttal. Before you asked me about probable cause and reasonable grounds under a petition to rescind, I said that I believe that we had cited, it's People v. Tucker, which is cited in our brief, and then People v. Tucker alludes to People v. Rush 319, Illinois Appellate 38, where they indicate specifically that in this setting, reasonable grounds under a petition to rescind is synonymous with probable cause. The only other argument I would have is the arguments being made by Counsel Brooks that we have the burden of persuasion, we have the burden of going forward, and even if the burden was switched, which she doesn't concede in this hearing, to where it flipped back to the People, that we still have the burden of persuasion overall. I think that the facts in this case are specific, that we did prove it overall. And if you look at the Boomer case, we're clearly ahead of the Boomer case, so I don't think the judge had the correct finding. I believe it was because the judge thought that the officer also believed my client lied when he asked him if he took prescription medication, and my client said no, they have conceded this in their brief. Thank you. Well, I've got a question. At what point do you have an obligation to follow up on the question of whether or not he received any kind of pharmaceuticals at the hospital prior to his blood being drawn? I could have brought somebody in from the hospital and shown the morphine. Yeah, that's true. I could have brought my client on the stand and asked him if he did take allergy medicine, which would have had the amphetamine. Once we establish, and I believe the record in this case shows it, that the officer didn't have probable cause. The officer was aiming, in this case, at alcohol. Two or three beers, he'd been on a poker run. Once we establish that he didn't have that, I think it was... That poker run would be automatic probable cause in the mind of most police officers. I understand that. Once we've established that, I think we've met our burden. I think that the officer didn't have enough, and what he did is when he saw the blood test, he had an opportunity where he could have pursued the opiate, and I don't think it's our burden. He doesn't have obvious signs of impairment. I appreciate Counsel Brooks' statement. Well, if you have an illegal substance under A6, you're guilty of DUI, but he didn't have enough at trial. He didn't say, I saw any signs of that. He didn't find any drugs at the scene. He didn't find any drugs on the defendant's person. He didn't have any information that he was under any kind of illegal substances. Thank you to both of you. The case is submitted. The court stands in recess.